UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | : | **Case No. 3:25-CR-48** |
| | : | |
| **Plaintiff,** | : | |
| | : | **JUDGE WALTER H. RICE** |
| **v.** | : | |
| | : | |
| **VINCENT NZIGIYIMFURA,** | : | **PARTIES' JOINT MOTION** |
| **a.k.a. Vincent Mfura,** | : | **TO CONTINUE TRIAL** |
| | : | **AND DECLARE CASE** |
| **Defendant.** | : | **COMPLEX AND UNUSUAL** |

The parties respectfully move to continue the current trial date of August 25, 2025, on the ground that this case is unusual and complex, given that it involves alleged immigration and naturalization fraud concerning events that allegedly took place in Rwanda during the 1994 genocide in that country. In light of the nature of this prosecution, adherence to the default time limits set forth in the Speedy Trial Act will deny the parties adequate opportunity to prepare and will result in a miscarriage of justice, necessitating the requested ends-of-justice continuance. The parties therefore request that the Court declare this case unusual and complex for purposes of the Speedy Trial Act and continue the trial and intermediate deadlines accordingly.

## I.    BACKGROUND

### A.    The Indictment

On or about June 10, 2025, Defendant was charged by indictment with two counts of attempted procurement of naturalization unlawfully, in violation of 18 U.S.C. § 1425, and one

1

count of fraud and misuse of visas, permits, and other documents, in violation of 18 U.S.C. § 1546(a).   (*See* Dkt. 1, Indictment, PAGEID 14-15.)[1]

The indictment alleges, *inter alia*, that Defendant, a Rwandan native, was a member of one or more extremist anti-Tutsi groups and "a leader and organizer" of the "genocide against Tutsis" in a particular area of Rwanda during the approximate time period of April through June 1994. (*See id.* ¶ 8.)

According to the indictment, Defendant fled Rwanda after the genocide, moving to the Democratic Republic of the Congo and then to Kenya before settling in Malawi in 1999.   (*See id.* ¶ 9.)   The indictment alleges that Defendant later fraudulently sought permission to come to the United States as a Lawful Permanent Resident ("LPR") by submitting and causing to be submitted, during the approximate period of February 2008 through March 2009, two DS-230 visa applications in which he purportedly knowingly misrepresented that he was not an alien who had engaged in genocide.   (*See id.* ¶¶ 10-12.)   Per the indictment, Defendant also allegedly submitted an affidavit containing additional allegedly material misstatements and omissions intended to conceal his role in the 1994 genocide in his native country, including the assertion that he was a "responsible man" who could not "behave badly in society," which was why he had no criminal record in Rwanda.   (*See id.* ¶ 13.)   The indictment alleges that, on the basis of these and other allegedly material misrepresentations and omissions, Defendant received an immigrant visa – which he used to enter the United States in or around April 2009 – and an LPR card.   (*See id.* ¶¶ 14-15.)

As set forth in the indictment, in January 2014, Defendant applied to naturalize as a United

---

[1] This section of the parties' joint motion summarizes, but does not recite verbatim or in full, certain of the factual allegations contained in the indictment.  Although defense counsel agrees that this motion accurately summarizes these allegations, Defendant does not concede the correctness or merits of any alleged underlying facts.

States citizen, submitting and causing to be submitted an N-400 application form in which he allegedly fraudulently misrepresented that:

a. he had never been a member of, or associated with, any organization, party, club, society, or similar group in the United States or elsewhere;

b. he had never persecuted any person because of membership in a particular social group;

c. he had never committed a crime or offense for which he was not arrested;

d. he had never given false or misleading information to any U.S. Government official while applying for any immigration benefit; and

e. he had never lied to any U.S. Government official to gain entry or admission into the United States.

(*See id.* ¶ 17.)

The indictment alleges that, in November 2014, Defendant participated in a naturalization interview during which he allegedly repeated the alleged misrepresentations in his N-400 while under oath.   (*See id.* ¶ 19.)

According to the indictment, Defendant submitted an I-90 application to renew his LPR card in or about late 2018.  (*See id.* ¶ 22.)  The indictment alleges that Defendant received a replacement LPR card, which he then allegedly presented to the Ohio Bureau of Motor Vehicles as proof of his name and legal presence in the United States when applying for a driver's license on or about July 27, 2021.  (*See id.* ¶¶ 22-23.)

**B.      Subsequent Procedural History**

On or about June 11, 2025, Defendant was arrested.  (*See* Dkt. 15, Returned Warrant.) Defendant made his initial appearance on June 12, 2025 (*see* Minute Entry of June 12, 2025), and the Government moved for pre-trial detention (*See* Dkt. 7, Mot. for Pretrial Detention).  The detention hearing was held on June 17, 2025, and Defendant was ordered detained.  (*See* Minute

Entry of June 17, 2025; Dkt. 13, Order of Detention Pending Trial.)

On or about June 26, 2025, the Court held a telephonic status conference (*see* Minute Entry of June 26, 2025), after which the Court issued a preliminary pretrial order setting a trial date of August 25, 2025 (*see* Dkt. 14, Preliminary Pretrial Order).

On or about July 10, 2025, the Government moved (without opposition) for entry of a protective order governing the use of discovery in this matter. (*See* Dkt. 17, Unopposed Gov't Mot. for Protective Order.) The Court entered the protective order on July 14, 2025. (*See* Dkt. 18, Protective Order.) That same day, the Court held a telephonic status conference, during which the Government raised the possibility of filing a joint motion to declare the case unusual or complex under 18 U.S.C. § 3161. (*See* Minute Entry of July 14, 2025.)[2]

The parties now jointly move, pursuant to 18 U.S.C. § 3161(h)(7)(A), for a continuance of the trial date (and of the other deadlines established in the preliminary pretrial order) and for a determination that the case is unusual and complex for purposes of the Speedy Trial Act.

## II.  LEGAL STANDARD

Under the Speedy Trial Act, a defendant must generally be brought to trial within 70 days of his indictment or first appearance before a judicial officer, whichever comes later. *See* 18 U.S.C. § 3161(c)(1). "But because criminal cases vary widely, and there are valid reasons for delay in some cases, the Act excludes delays due to certain, enumerated events from the seventy-day period." *United States* v. *Richardson*, 681 F.3d 736, 738 (6th Cir. 2012). For example, a district court may grant a continuance and "extend the 70-day period in which it must try a defendant if the court finds 'that the ends of justice served by taking such action outweigh the best interest of the public and the defendant in a speedy trial.'" *United States* v. *Allen*, 86 F.4th 295,

---

[2] Given the procedural history recounted above, the parties calculate that 30 days have elapsed from the speedy-trial clock.

307 (6th Cir. 2023) (quoting 18 U.S.C. § 3161(h)(7)(A)).

In determining whether to grant an ends-of-justice continuance (and to exclude the resulting delay from computation of the deadline for bringing a defendant to trial), a court must consider a number of factors, including:

- whether failure to grant the continuance would likely make a continuation of the case impossible or would result in a "miscarriage of justice," and

- whether the case is so "unusual" or "complex" due to the "nature of the prosecution" that the standard time limits will not afford the parties an adequate opportunity to prepare.

*See* 18 U.S.C. § 3161(h)(7)(B); *see also United States* v. *White*, 920 F.3d 1109, 1115 (6th Cir. 2019) (noting that, "[t]o exclude time under this exception, the court must consider certain factors," including "whether the failure to grant the continuance would result in a miscarriage of justice" and "whether due to the nature of the case (or other factors), the case is too complex to reasonably expect adequate preparation within the Act's time limits" (internal citations and quotation marks omitted)).[3]

## III. ARGUMENT

The parties jointly submit that the "ends of justice" served by granting a continuance in this matter "outweigh the best interests of the public and the defendant in a speedy trial" under the relevant factors. *See* 18 U.S.C. § 3161(h)(7)(A); *see also id.* § 3161(h)(7)(B).

In particular, this case is complex and unusual due to the nature of the prosecution, which involves immigration-fraud charges arising from the alleged concealment of events that occurred over 30 years ago in another country across an ocean. As a result of the unique and complicated character of this case, the parties will need substantial additional time to prepare adequately for

---

[3] The factors expressly listed under 18 U.S.C. § 3161(h)(7)(B) are "non-exhaustive." *See United States* v. *Pouncy*, 2025 WL 977142, at *6 (E.D. Mich. Apr. 1, 2025).

pretrial proceedings and later for trial. *Cf. United States* v. *Mulligan*, 520 F.2d 1327, 1332 (6th Cir. 1975) ("To the extent that delay may be attributable to the complexity of the case, tolerance may be shown.").

Far from a typical criminal case dealing with temporally and geographically narrow events (*e.g.*, a prosecution for illegal possession of a firearm on one date in a single place), this prosecution involves alleged actions spanning decades and continents and is expected to entail a number of significant complexities and unusual circumstances, including, but not limited to, the following:

*First*, Defendant is charged with three counts of immigration-document and naturalization fraud that involve: (a) multiple governmental departments and agencies, (b) numerous forms, applications, and other documents submitted at various points in time between 2008 and 2021; (c) in-person interactions with U.S. officials occurring in two different countries; (d) several discrete immigration benefits and statuses; and (e) numerous allegedly material misrepresentations and omissions.

*Second*, because the charges arise from Defendant's alleged efforts to conceal his purported leadership role in the perpetration of genocide in a particular area of Rwanda, the trial in this case may require the parties to litigate Defendant's alleged actions during the multi-month genocide occurring more than three decades ago. In other words, the Government may seek to prove that Defendant participated in the planning and execution of the genocide and in multiple murders in Rwanda in 1994, and Defendant may seek to dispute those allegations. *See United States* v. *Munyenyezi*, 2011 WL 1517951, at *1 (D.N.H. Apr. 20, 2011) ("Realistically, the prosecution involves a case within a case—before the charged offense can be proven, defendant's participation in the genocide must be proven.").

*Third*, the discovery in this matter – which is subject to a protective order limiting its use

and dissemination – will be voluminous and will include certain materials written in Kinyarwanda, a language used in Rwanda.   More specifically, the Government anticipates producing or making available discovery materials falling into the following broad categories, among others:

- background documents regarding the history of Rwanda and the genocide;

- U.S. immigration records concerning Defendant's visa, LPR card, and efforts to naturalize;

- Rwandan records, including documents related to Defendant's trial *in absentia* in gacaca court[4] and to indictments and arrest warrants issued against him by the Rwandan National Public Prosecution Authority;

- items and documents seized during searches of Defendant's residence; and

- investigative materials, such as reports of witness interviews.

*Fourth*, the potential witnesses in this matter (many of whom do not speak English) reside in several different countries (including the United States and Rwanda), giving rise to a number of potential logistical challenges related to translation and travel.  *See Munyenyezi*, 2011 WL 1517951, at *1 (highlighting complexities arising from presence of witnesses in Rwanda, including need to "make arrangements for witnesses to come to the United States to testify").

And *fifth*, Defendant himself has, during prior court proceedings in this matter, relied upon the assistance of a Kinyarwanda interpreter and may seek to do so while preparing for trial and conversing with defense counsel.

When viewed in the aggregate, the complexities and unique aspects of this case render adequate preparation within the standard trial timeline an impossibility, and a failure to grant the requested continuance would result in a miscarriage of justice, in that the parties would have insufficient time to confront the logistical challenges of this criminal matter and ready themselves

---

[4] Gacaca courts were regional community-based courts established in Rwanda to adjudicate the massive caseloads resulting from the genocide.

7

for trial. *See United States* v. *Stone*, 461 F. App'x 461, 465 (6th Cir. 2012) ("Granting a continuance based on the complexity of a case is statutorily appropriate and has been established in case law as adequate."); *see also United States* v. *China Gen. Nuclear Power Co.*, 2024 WL 2027521, at *1 (E.D. Tenn. May 7, 2024) (granting 14-month ends-of-justice continuance in complex case involving, *inter alia*, "foreign corporate defendant," "voluminous discovery," "novel issues of law and fact," and witnesses located in "United States and abroad"); *Munyenyzi*, 2011 WL 1517951, at *1 (continuing trial based on ends of justice due to complexity of case and "unusual obstacles" it posed in matter involving allegations defendant had participated in Rwandan genocide).

## IV.     CONCLUSION

For the foregoing reasons, the Court should declare this matter unusual and complex and grant an ends-of-justice continuance of the trial pursuant to 18 U.S.C. § 3161(h)(7)(A).

KELLY A. NORRIS
Acting United States Attorney

| | |
|---|---|
| s/F. Arthur Mullins | s/George Painter |
| F. ARTHUR MULLINS, ESQ. | GEORGE PAINTER (0097271) |
| Attorney for Defendant | Assistant U.S. Attorney |
| 1 S. Main Street, Suite 490 | 200 W. Second Street, Suite 600 |
| Dayton, Ohio 45402 | Dayton, Ohio 45402 |
| Office: (937) 225-7687 | Office: (937) 225-2910 |
| Fax: (937) 225-7688 | Office: (513) 684-3711 |
| E-mail: art_mullins@fd.org | E-mail: rob.painter@usdoj.gov |

MATTHEW R. GALEOTTI
Acting Assistant Attorney General
U.S. Department of Justice

s/Brian Morgan
BRIAN MORGAN (NY 4276804)
Trial Attorney
1301 New York Avenue NW
Washington DC 20530
(202) 305-3717
E-mail: brian.morgan@usdoj.gov

8

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing was served this 24th day of July, 2025, on Defense Counsel via the Court's ECF filing system.

s/George Painter
GEORGE PAINTER (0097271)
Assistant United States Attorney